JOHN B. KETTELL & others *vs.* ALLIANCE INSURANCE COMPANY

Under an open policy of insurance in common form, containing the usual memorandum clause, and also this clause, "partial loss on sheet iron, iron wire, brazier's rods, iron hoops and tin plates is excepted," the insurers are liable for a constructive total loss of tin plates; and if a number of boxes of tin plates, shipped and valued as one parcel, is damaged by the stranding of the ship, carried to the nearest market and there sold for less than half its valuation in the policy, deducting the necessary expenses of the transportation and sale, and duly abandoned it is a constructive total loss.

ACTION OF CONTRACT on an open policy of insurance for $25,000 at a nominal premium "on property on board any vessel or vessels to, at and from ports or places, per indorsements." Among the indorsements was this: "February 21, 1854. $4850. Rate 1¾. Premium $84.87. Ship Charles Humberston, from Liverpool to Boston."

The policy was in the common Boston form, against perils of the sea and other perils: " Provided that the insurers shall not be liable for any partial loss on hemp and flax, unless the loss amount to twenty per cent. on the whole aggregate value of such articles; nor for any partial loss on sugar, flaxseed, bread, tobacco, and rice, unless the loss amount to seven per cent. on the whole aggregate value of such articles; nor for any partial loss on salt, grain, fish, fruit, hides, skins, or other goods that are esteemed perishable in their own nature, unless it amount to seven per cent. on the whole aggregate value of such articles, and happen by stranding; nor for any partial loss on other goods or on the vessel or freight, unless it amount to five per cent.; exclusive, in each case, of all charges and expenses incurred for the purpose of ascertaining and proving the loss; but the owners of such goods shall recover on a general average. It is further agreed, that the insurers shall not be liable for damage or injury to goods by dampness, change of flavor or being spotted, discolored or mouldy, unless the same be caused by actual contact of sea water with the articles so damaged; and that the company shall not be answerable for loss or damage, by wet or exposure to the elements, of goods insured as on deck. In

Kettell & others *v.* Alliance Insurance Company.

case of damage, by perils of the sea, to dry goods, cutlery, or other hardware, the loss shall be ascertained by a separation and sale of the portion only of the contents of the packages so damaged, and not otherwise; and the same practice shall obtain as to all other merchandise, as far as practicable." At the end of the last paragraph of the policy, next before the formal conclusion, were printed these words : " Partial loss on sheet iron, iron wire, brazier's rods, iron hoops and tin plates, is excepted."

*Bigelow, J.,* before whom the trial was commenced, reserved the case for the decision of the full court, upon a report of which the material parts were as follows :

The shipment in question consisted of five hundred boxes of tin plates, invoiced and valued together at one sum. The Charles Humberston, with the tin plates on board, sailed from Liverpool for Boston on the 1st of March 1854, and was wrecked in Dundrum Bay, on the north coast of Ireland, one hundred and fifty · miles from Liverpool. The bottom of the vessel was stove in, so that she filled with water, and the tide flowed freely in and out of her, and she finally went to pieces. The salt water got into all the boxes, and damaged all the plates more or less ; some of them were wholly destroyed; and the others, after having been exposed for some weeks to the action of the salt water, were taken out of the ship, carried back to Liverpool, there surveyed, and, " in consequence of their damaged and perishing state," recommended by the surveyors to be immediately sold, and were sold by public auction for whom it might concern. It was for the interest of all concerned that they should be sold at Liverpool. The accounts of sale showed that the proceeds of the sales, deducting the expenses of raising the tin and sending it to Liverpool, were less than half the value of the shipment, but more than half without such deduction.

The plaintiffs introduced several depositions tending to show that the effect of the salt water was to utterly spoil the plates for use as bright tin ware, though they might have been japanned. And there was conflicting evidence upon the question whether, if the tin had been reshipped from Liverpool to Boston, the

expenses of the reshipment would have exceeded the sum for which it would have been sold upon arrival in Boston.

The plaintiffs made a seasonable abandonment, and claimed a right to recover as for a total loss.

This case was argued before the first decision in the next preceding case of *Heebner* v. *Eagle Ins. Co. ante*, 133.

*R. Fletcher*, for the plaintiffs. As the loss was more than five per cent., the defendants, under the general enumeration of risks and the memorandum clause, are clearly liable for the loss claimed, whether the goods are regarded as perishable in their nature or not. The expenses are to be deducted in estimating whether the loss exceeded fifty per cent. 2 Phil. Ins. § 1732.

The last clause in the policy — " Partial loss on sheet iron, iron wire, brazier's rods, iron hoops and tin plates excepted " — is imperfect, unmeaning and nugatory. It does not show whether these articles are excepted from the classes of partial losses for which the defendants are liable, or from those for which they are not liable. If it is to be understood as meaning that the underwriters shall not be liable for any partial loss on tin plates and other articles specified, it is nugatory and void, as being repugnant to the express previous undertaking to be liable for such a partial loss if amounting to five per cent. 2 Parsons on Con. 20 note, 26.

But if this clause is equivalent to the insertion in the memorandum clause of the words " provided that the insurers shall not be liable for any partial loss on tin plates," still the property insured having been damaged by perils of the sea, and never reached its destination, but been justifiably sold at Liverpool, and the actual loss being more than fifty per cent., the plaintiffs, on abandoning, were entitled by the general principles of the law of insurance to recover for a total loss. 2 Phil. Ins. § 1623.

Upon the question, what constitutes a total loss under the memorandum clause, " the adjudged cases present so much discrepancy, as to leave it to the discretion of judges to adopt the doctrine that may seem most consistent with general principles." 2 Phil. Ins. § 1767. Those decisions, which hold that there must be an actual total destruction of memorandum

articles, in order to make the insurers liable, rest entirely upon the authority of the *dictum* of Lord Mansfield in *Cocking* v. *Frazer*, Marsh Ins. (3d ed.) 219, and Park. Ins. (7th ed.) 181, and not upon any discussion of principles. *Dyson* v. *Rowcroft*, 3 Bos. & Pul. 474.   *Burnett* v. *Kensington*, 7 T. R. 222.   *LeRoy* v. *Gouverneur*, 1 Johns. Cas. 226.   *Maggrath* v. *Church*, 1 Caines, 196. *Biays* v. *Chesapeake Ins. Co.* 7 Cranch, 415.   *Marcardier* v. *Chesapeake Ins. Co.* 8 Cranch, 39.   *Moreau* v. *United States Ins. Co.* 1 Wheat. 219.   *Brooke* v. *Louisiana Ins. Co.* 17 Martin, 530.   *Wadsworth* v. *Pacific Ins. Co.* 4 Wend. 33.   *Robinson* v. *Commonwealth Ins. Co.* 3 Sumner, 220.   *Hugg* v. *Augusta Ins. & Banking Co.* 7 How. 595.   That doctrine is no longer law in England. *Roux* v. *Salvador*, 3 Bing. N. C. 266.  2 Arnould on Ins. §§ 317, 318.  It has been rejected in the only American case which has been discussed and decided on principle.  *Poole* v. *Protection Ins. Co.* 14 Conn. 47.   And it is inconsistent with the decisions of this court that a cargo of a memorandum article, as well as one of any other article, may be abandoned for a loss of the voyage.  _*Richardson* v. *Maine Ins. Co.* 6 Mass. 119. *Murray* v. *Hatch*, 6 Mass. 465.  See also *Tudor* v. *New England Mutual Marine Ins. Co.* 12 Cush. 554.

The memorandum clause properly relates only to articles perishable in their nature, and was adopted to obviate the difficulty of determining whether the injury occurred from external causes or from the perishable nature of the articles insured. The decisions upon that clause do not apply to this case.   To hold that there must be a total destruction of sheet iron, iron wire, brazier's rods, iron hoops and tin plates, would make the policy of no value to the assured.   It cannot have that construction unless limited to " total loss by the absolute destruction of the property," as in *Guerlain* v. *Columbian Ins. Co.* 7 Johns. 527.

The goods were so damaged by the direct operation of the perils insured against, that they could not have been brought to Boston so as to be there of any value as the sort of article and fit for the use of such an article as was shipped ; they would not have been worth there more than the freight and charges, and could be made of value only by japanning them and thus

making them a new article; each of which entitles the plaintiffs to abandon and claim for a total loss.

The ship was stranded and wholly lost, the voyage broken up, and the tin plates for a time wholly submerged, and never reached their place of destination or came to the hands of the assured, but were at least constructively destroyed, so that the assured might abandon and claim for a total loss. 2 Phil. Ins. §§ 1527, 1607.

*F. C. Loring*, for the defendants. Here was no actual total loss. Under an insurance against total loss only, insurers are not liable for a constructive total loss by damage. *Murray* v. *Hatch*, 6 Mass. 465. 2 Phil. Ins. § 1767.

The English law is said not to recognize any distinction as to totality of loss between goods free and goods not free from average. *Roux* v. *Salvador*, 3 Bing. N. C. 266, by Lord Abinger. 2 Arnould on Ins. § 318. Yet see Tindal, C. J., in *Roux* v. *Salvador*, 1 Bing. N. C. 526. That may well be; for by that law there is no constructive total loss, under a common policy, where the goods can be made to arrive at the port of destination so as to be of value there, or the ship can be repaired at a cost less than her whole value. But the same rule cannot apply in this country where, in an ordinary case, if the damage to ship or cargo exceeds fifty per centum — that is, if the loss is not really total, but partial and beyond a certain amount — the owner has the right to abandon the subject, if he chooses to do so, and to claim payment as for a total loss; not because the thing is really lost, but because the damage to it exceeds a certain amount of its value.

Loss by damage is necessarily partial so long as the subject continues to exist *in specie* and in value. In some cases, known as constructive total losses, the loss is, for the time being, actually total; if it continues so, the owner may recover without an abandonment, the insurer becoming subrogated to his rights But it is never so in respect to what is called a constructive total loss by reason of damage. Where partial loss is excepted, the contract is that the insurer will pay if the thing is destroyed or the owner deprived of it by a peril, but that he shall not be

called upon to make good a diminution in value by mere damage. To hold an insurer liable in such case would be unjust, because his liability to pay anything would be made to depend on the will of the assured and the state of the market.

It is settled beyond controversy in this country, that where goods are insured " free from damage" or " partial loss excepted," the insurer is not liable for a constructive total loss by damage. 2 Phil. Ins. § 1767. *Hugg* v. *Augusta Ins. & Banking Co.* 7 How. 595. *Lord* v. *Neptune Ins. Co. ante*, 109. *Aranzamendi* v. *Louisiana Ins. Co.* 2 Louisiana, 432. *Skinner* v. *Western Marine & Fire Ins. Co.* 19 Louisiana, 273. *Depeyster* v. *Sun Mutual Ins. Co.* 17 Barb. 306. *Williams* v. *Kennebeck Mutual Ins. Co.* 31 Maine, 455.

The criterion to determine whether a total loss exists, where the insurance is " free from partial loss " and the loss arises from damage, seems to be whether an abandonment is essential to create a liability for a total loss; if it is, then the loss is constructively, not actually, total, and the insurer is not liable. When the insurance is on a vessel against total loss only, and she is damaged so badly that the expense of repairs will exceed her value when repaired, that is an actual total loss; no abandonment is necessary, and the insurer is liable. But if the damage only amounts to fifty per cent., the loss is only partial; an abandonment is essential, and the insurer against total loss only is not liable. *Bullard* v. *Roger Williams Ins. Co.* 1 Curt. C. C. 148. *Smith* v. *Manufacturers Ins. Co.* 7 Met. 452. And the same test must be applied to insurance on cargo; if it can be made to arrive *in specie* and of value, the loss is not actually total, an abandonment is necessary to make it constructively total, and the insurer " free from average " is not liable.

The facts of this case do not show an actual total loss, even under the most modern English rule, by which, if the goods are actually destroyed in value, or it is impracticable to send them on, because the expense of doing so would exceed the value at the port of destination, it is an actual loss, though the goods might be made to arrive *in specie*. *Roux* v. *Salvador*, 3 Bing. N. C. 266. *Rosetto* v. *Gurney*, 11 C. B. 176. And that rule

13 *

seems to be opposed to the American doctrine. *Hugg* v. *Augusta Ins. & Banking Co.*, and *Lord* v. *Neptune Ins. Co.*, above cited.

Besides, the plates were sold in Liverpool for more than their actual cost; and the sale not being necessary, but only expedient for the benefit of the owner, he must bear the expenses.

Tin plates, though very susceptible of damage, are not perishable in their own nature, like fruits, vegetables, beef, or the like. So long as they continue in existence, they must retain their identity.

SHAW, C. J. [After stating the other facts.] It appears by the accounts of the sales of the tin, that the net proceeds, after deducting the necessary costs and expenses of raising and sending them to Liverpool and the costs of sale, were less than half of the value of the shipment, though the gross sales without such deduction would exceed half the value. But the court are of opinion that the costs and charges ought to be thus deducted. The property would probably bring little or nothing, as taken from the ship on the coast of Ireland; it must be taken to a market; the expenses of such transportation and of the sales at Liverpool were a necessary diminution of the value, and, as such, reduced it to a sum less than half the value of the shipment. All the boxes of tin were alike submerged and lay some time in the salt water, by means of which the tin plates were more or less tarnished and damaged; none of the boxes escaped entirely dry, and some were entirely broken and lost. We have not found it necessary to determine the question of fact, upon which the depositions were conflicting, whether, if the plates had been reshipped from Liverpool to Boston, their original destination, the cost of such transportation would have exceeded the value of the tin upon arrival.

The first question raised in this case is respecting the true construction of this exception, contained in a printed line in the very last clause in the body of the policy, without context to explain or give it effect. "Partial loss on sheet iron, iron wire, brazier's rods, iron hoops and tin plates, is excepted." It is contended that as it stands it is senseless and void for uncertainty. The sentence is certainly elliptical

and abbreviated to the fewest possible words, and so is obscure, as a new clause crowded into an old printed form is likely to be, having neither preamble nor recital to introduce it. But we think that the meaning cannot be mistaken. The main purpose of the whole contract was for one party to insure the other against certain maritime losses, some designated as total and some as partial. It is not repugnant, in the sense in which a clause is contradictory and so void for repugnancy; where a proposition is expressed in general terms, and in the same writing are other clauses limiting or qualifying the generality of this proposition, or excepting something out of it, though not in the same sentence, yet in the same instrument and going into operation at the same time, both may well stand together and have their full force, as if the words of qualification or exception were in immediate connection with the proposition. We can have no doubt that by the true construction of this clause the insurers were not to be liable for loss on tin plates, unless such loss, estimated according to the rules and usages of Boston, should amount to a total loss. It is somewhat like the provision in regard to goods perishable in their own nature, enumerated in another part of the policy. But it differs in one respect; those articles are not absolutely exempted, but the underwriter is liable for a partial loss, in case it be occasioned by the stranding of the vessel, and exceed seven per cent. It is manifest therefore, that if this exception had come under the memorandum clause, the plaintiff would have been entitled to recover, because it is manifest from the uncontested facts of the case, that this vessel was lost by stranding, and the damage to the goods was occasioned thereby and did greatly exceed seven per cent.

What then is the extent of this exception? The natural construction is, that it leaves the insurer liable for all total losses; but it makes no distinction between absolute and constructive total losses; and in case of a constructive total loss, which gives the assured a right to abandon, and he exercises the right, it becomes a legal total loss, as if absolute in its nature. The clause in the contract gives no intimation that it is any particular kind of total loss, whether absolute or technical; it simply excludes

all kind of liability for a partial loss. By the natural construc-
tion of these provisions, it would seem that if the goods insured
were placed by one of the perils insured against in that situa-
tion in which the assured has a right to abandon, and he does
abandon, he has sustained a total loss, not within the exception.

But it has been argued that a constructive total loss is not
within the exception, but that it must be an actual loss or de-
struction of the thing to take the case out of the operation of
the exception and render the underwriter liable as for a total
loss. This is maintained as resulting from a series of decisions,
as a well established principle of insurance law. It is not indeed
insisted or claimed that there is any such rule, or any judicial
decision to such effect, upon this special, unqualified exception
of liability for partial loss on commodities of iron, brass and tin;
but the argument is, that there is a strict analogy between this
exception and the common one applicable to memorandum ar-
ticles " warranted free of average, unless general, or the ship be
stranded," that the rule applicable to the one must include the
other, and in case of such qualified exception there must be
proof of an absolute total loss to take it out of the exception.

There is certainly a distinction of a practical character be-
tween these excepted articles and the memorandum articles
which are subject to a limited and qualified exception. The
exception is of sheet iron, iron wire, brazier's rods, iron hoops, tin
plates, articles liable to be tarnished, corroded and damaged by
contact with sea water to almost the whole extent of their com-
mercial value, but indestructible in their nature. One reason
given why a constructive total loss should not be made up of
damage on memorandum articles, so as to allow of an abandon-
ment for damage, was that in case of mere damage it was so
difficult to distinguish between that part of the visible damage
which proceeds from internal tendency to decay, and that part
from perils of the sea, that it must have been the intention of
the contracting parties to exclude it altogether. In this respect
there is a marked difference between tin and brass goods liable
to tarnish, and memorandum articles liable to decay. Another
clause in the policy guards the insurer against loss by dampness

or other indirect damage to goods, not caused by actual contact of sea water with the articles damaged. So that it is only when these polished but indestructible articles come into actual contact with sea water, and that by stranding or some one of the perils of the sea insured against, that the underwriter can become liable at all; and a loss of this character can in general be ascertained with as much certainty as a similar loss to dry goods, hardware, or other merchandise not perishable in its nature.

It seems a little singular that upon the construction of this special exemption of tin plates and other metal goods liable to tarnish by sea water, there is no judicial decision; none was referred to in the argument, and we. have no reference to it in any of the cases, except perhaps where, in a few instances, they are simply enumerated with other memorandum articles. We say nothing now of a case where there is a specific insurance on goods, and they arrive at the port of destination *in specie,* but having sustained damage by a peril insured against to an amount exceeding half their value. It would seem more consistent with the principles of insurance law, that the insured should be entitled to abandon and recover for a total loss, if the goods insured have been damaged by such peril, according to the American rule, to an amount exceeding one half their actual value, and, according to the English rule, to the amount of their entire value. But we say nothing of such a case here, because it is not necessary. This was an insurance on certain specific goods shipped and valued as one parcel, to be taken for all purposes as one subject of insurance, on board this vessel for this voyage. The ship on the voyage was cast away and lost, the goods were with some loss fished up, carried to the nearest market, and sold for a sum which, after deducting necessary expenses, amounted to less than half their value, they were duly and seasonably abandoned, and the court are of opinion, that this was a technical total loss, and such total loss as takes these goods out of the exception.

In considering what amounts to a constructive total loss, we must consider the different rule of law above alluded to as adopted and practised on in England and in this country. In

England, a ship is not regarded as constructively wholly lost, so as to warrant the assured in abandoning, unless it would cost more to repair the ship, in the condition and circumstances in which she is placed, than her value when repaired; and the same rule applies to goods damaged by the perils of the sea. But by the American law, if a vessel is damaged by a peril of the sea to half her value, or, to speak more exactly, to such an amount that the assurer, after repair, and upon an adjustment as of a partial loss, would have to pay more than half the value; and in case of insurance on goods, if damaged by peril of the sea to more than half their value; the assured may, in either case, consider the adventure at an end, abandon to the underwriters, and claim for a total loss. The existence and qualifications of this latter rule, authorizing the assured on goods other than memorandum articles, upon an interruption of the voyage and a damage of the goods insured to half their value, to abandon, is established and illustrated in the case of *Bryant* v. *Commonwealth Ins. Co.* and the cases there cited. 6 Pick. 131, 9 Pick. 485, and 13 Pick. 543.

We have not thought it necessary to review the English cases on this subject, many of which were cited in the argument, for the reason already given, that they all related to memorandum articles, and not, like this, to a specific exception of goods liable to particular damage, but not perishable in their nature, and not embraced in the common memorandum.

Nor have we found it necessary to examine the English authorities upon another point of some difficulty, where the attempt has been to extricate a loss from the exception of partial loss on memorandum articles, by showing that the loss sought to be recovered was a total loss of part of the goods at risk; and this distinction has sometimes been carried to great extent, and perhaps beyond what the true principle of the law would warrant. It is admissible only, we think, where goods of the same kind are separately invoiced and insured, or where insurance is made specifically upon bales, boxes or other packages, valued and insured by the bale or package, or number of packages, in parcels less than the whole. The loss of an en-

tire package or parcel thus separately valued and insured is a total loss of memorandum articles, and may be recovered as such within the exception. This point has been put on a right footing and the previous cases ably reviewed by a judgment delivered by Jervis, C. J., in the case of *Ralli* v. *Janson*, in the Exchequer Chamber, in May 1856. 6 El. & Bl. 422.

In the present case, the goods insured, tin plates, were all of one kind, invoiced, shipped and insured in one lot, valued as an entire subject, the whole were to some extent damaged, some entirely lost, so that no question can arise of being one entire subject of insurance, and a loss of more than half of that entire subject.

There is no adjudged case which holds that when such goods, liable to particular damage, but not to decay or destruction, by sea water, are shipped and insured, with an exception of liability for the partial loss, and the goods are damaged to more than half their value by a sea peril, the goods left at an intermediate port, so that by the established rule of law here the assured has the right to abandon, and he does seasonably abandon, this is not a legal total loss, for which he may recover. Upon principle the court are of opinion, that this is a total loss, not within the exception, and the plaintiffs are entitled to recover.

*Judgment for the plaintiffs.*